## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THERMAL ENERGY COMPANY, a
Joint Venture, and E. B. LARUE, JR. and
BARBARA JEAN MURCHISON COFFMAN,
Joint Venturers, doing business as
THERMAL ENERGY COMPANY, ENDEVEX
Corporation, a New Mexico corporation, and
THERMENEX, Limited Partnership, a
New Mexico Limited Partnership,

      Plaintiffs,

v.                                                                   No. CIV  05-699  ACT/WDS

GAIL A. NORTON, United States Secretary
of Interior; THE UNITED STATES
DEPARTMENT OF INTERIOR;
KATHLEEN CLARKE, Director of the United States
Bureau of Land Management; THE UNITED STATES
BUREAU OF LAND MANAGEMENT IN
NEW MEXICO; and THE UNITED STATES
DEPARTMENT OF INTERIOR BOARD
OF LAND APPEALS,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' United States, et al., Motion to Dismiss for Lack of Jurisdiction [Doc. No. 18], and the Plaintiffs' Thermal Energy Company, et al., Motion for a Stay. [Doc. No. 20].  Having reviewed the motions, the Court finds that the Motion to Dismiss for Lack of Jurisdiction is well taken and will be GRANTED.  The Plaintiffs' Motion for a Stay is DENIED.  The case will be dismissed WITHOUT PREJUDICE so

that the Plaintiffs may file their lawsuit again, should it be necessary in the future.

## FACTUAL BACKGROUND

Plaintiffs brought this lawsuit because of the delays in their Preference Right Lease Applications for coal that they requested be issued by the Bureau of Land Management. Thirty four years ago, in January, 1972, Plaintiffs filed their Preference Right Lease Applications for coal prospecting permits with the Bureau of Land Management (BLM). To date, the applications for the three sites are still pending.

As explained by the parties, historically there have been two different procedures available for a person to obtain a coal lease from the federal government. If a coal tract is offered for sale through the BLM, a person could bid competitively for the lease. In other situations, a person could seek a permit to prospect for previously unknown or unverified coal. In return, a successful prospector who found such coal could apply for a non-competitive Preference Right Lease Application (PRLA) for that coal. *See*, 43 C.F.R. §3430.0-1 through §3430.7.

The PRLA was not automatically given to the prospector upon application. The application had to be evaluated by the BLM to see if commercial quantities of coal had been discovered, which by definition meant that the coal could be economically mined. Applicants are required to submit technical information and to address the environmental and reclamation costs raised by the BLM. The regulations state:

> A preference right lease shall be issued if, upon review of the application, any available land use plan and the environmental assessment or environmental impact statement, the authorized officer determines that:
> (a) Coal has been discovered in commercial quantities on the lands applied for;
> (b) The applicant has used reasonable economic assumptions and data to support

>  the showing that coal has been found on the proposed lease in commercial quantities; and
>  (c) The conditions or protective lease stipulations assure that environmental damage can be avoided or acceptably mitigated.

43 C.F.R. §3430.5-3

Plaintiffs submitted three PRLA's in January 1972. From 1976 to 1987, Plaintiffs submitted information in support of their applications in response to BLM's requests. In November, 1992, and in March, 1993, the BLM issued decisions rejecting the lease applications on the grounds that the Plaintiffs had failed to discover coal in commercial quantities and on other grounds. The Plaintiffs appealed the decision to the Interior Board of Land Appeals (IBLA). In May, 1996, the IBLA set aside the BLM's decisions and remanded the applications back to the BLM.

In July, 1997, the BLM issued a decision that commercial quantities of coal existed for all three applications and that the PRLA's should be issued. The Navajo Nation and an individual appealed that decision to the IBLA. In April, 2000, the IBLA remanded the applications back to the BLM. From October, 2000, to January, 2005, Plaintiffs repeatedly contacted the BLM and provided additional information in support of their applications. In January, 2005, the BLM advised the Plaintiffs it did not know when it would issue decisions on the remanded applications.

In June, 2005, Plaintiffs filed this lawsuit asking this Court to compel agency action. BLM issued its decision on the three PRLA's on October 20, 2005. The decision determined that coal had not been discovered in commercial quantities and therefore the BLM would not issue the leases. Plaintiffs appealed this decision to the United States Department of the Interior's Office of Hearings and Appeals, the Interior Board of Land Appeals, on November 15, 2005. The matter is

still on appeal.

JURISDICTION

The parties agree that this matter is on appeal to the appellate agency of the United States Department of Interior.  The parties further agree that once the appellate agency of the Department of Interior, the Interior Board of Land Appeals, issues its final decision that the decision will be "final agency action" and will be reviewable by this Court under the Administrative Procedures Act, 5 U.S.C. §§701 et. seq. (APA).

But the parties disagree as to whether this Court has continuing jurisdiction over this lawsuit while the appeal of the PRLA's is pending before the IBLA.  The Defendants argue that as long as the matter is on appeal to the BLM's appellate agency, that the APA prohibits this Court from retaining jurisdiction of the lawsuit.  The Plaintiffs argue that this Court may retain jurisdiction of this matter and merely stay these proceedings while awaiting final agency action by the IBLA.  Plaintiffs contend that this Court may retain jurisdiction of this lawsuit under the APA, 5 U.S.C. § 706 (1), under the Mandamus Act, 28 U.S.C. § 1361, under the  Declaratory Relief Act, 28 U.S.C. § 2201, and under the Federal Questions Statute, 28 U.S.C. § 1331.

JURISDICTION UNDER THE ADMINISTRATIVE PROCEDURES ACT

Plaintiffs argue that 5 U.S.C. § 706(1) of the APA authorizes this Court to "compel agency action unlawfully withheld or unreasonably delayed."  This section of the APA does grant Courts the authority to order an agency to act when an agency fails to comply with a mandatory, deadline imposed upon it by statute or has failed to act within a reasonable time.  Forest

Guardians v. Babbitt, 174 F. 3d 1178 (10th Cir. 1999).  However, the APA's language does not allow a court to substitute its discretion for an agency's discretion.  A court is limited, if it finds that agency action has been unreasonable delayed, to ordering the agency to act.  The APA merely provides a mechanism whereby a court can remedy "inaction"; it does not authorize a court to tell an agency how to act.  Id., at 1189-1191.  U.S.C. § 704;

The doctrine of the exhaustion of administrative remedies is well established.  Except in extraordinary circumstances, "no one is entitled to judicial relief for supposed or threatened injury until the prescribed administrative remedy has been exhausted."  McKart v. United States, 395 U.S. 185, 193 (1969).  The BLM regulations governing PRLA's state that an applicant shall have the right to a hearing before an Administrative Law Judge if his application is rejected.  43 C.F.R. §3430.5-2.  If an agency decision is subject to an appeal within the agency, the party must appeal the decision to the highest authority within the agency before judicial review is available.  Coosewoon v. Meridian Oil Company, 25 F. 3d 920, 924 (10th Cir. 1994).

The BLM issued its decision a few months after the filing of this lawsuit.  While Plaintiffs argue that their lawsuit is "the hammer that causes the Department of Interior to act" and that therefore, the lawsuit should not be dismissed but stayed, the fact is that the lawsuit was brought to compel agency action. Complaint, ¶1 ("This is a lawsuit to compel agency action.")  The agency has acted, issued decisions adverse to the Plaintiffs, and the Plaintiffs have appealed the decisions.  Because the Plaintiffs have failed to exhaust their administrative remedies, this Court has no jurisdiction under the APA until the IBLA issues its final agency action in the form of a decision.

5

## MANDAMUS ACT

The Mandamus Act, 28 U.S.C. § 1361, does not confer jurisdiction on this Court at this point in this dispute. Mandamus is only appropriate where the defendant government officer or employee owes a clear, nondiscretionary and ministerial duty to the plaintiff. <u>Simmat v. U.S. Bureau of Prisons</u>, 413 F. 3d 1225 (10th Cir. 2005). Even if the Plaintiffs could establish that the BLM owed them a ministerial, clearly defined, nondiscretionary duty to process their PRLA's in a timely fashion, the fact is that the BLM has now processed their PRLA's. There is no duty owed to the Plaintiffs by an officer or employee of the United States or any agency left to compel. *See*, <u>Rios v. Ziglar</u>, 398 F.3d 1201, 1206-7 (10th Cir. 2005).

## DECLARATORY JUDGMENT ACT

The Declaratory Judgment Act, 28 U.S.C. § 2201, does not by itself provide a basis of jurisdiction in federal district court. Jurisdiction only exists under the statute if there is also an independent basis of jurisdiction such as the APA. 26 C.J.S. Declaratory Judgment §116.

## FEDERAL QUESTION JURISDICTION

A case arises under the laws of the United States, thus conferring jurisdiction under the federal question doctrine, if it clearly and substantially involves a dispute or controversy respecting the validity, construction or effect of such laws which is determinative of the resulting judgment. <u>Mountain Fuel Supply Company v. Johnson</u>, 586 F.2d 1375, 1381 (10th Cir. 1978). This case does not involve the interpretation of the Mineral Leasing Act of 1920, as amended, codified at 30 U.S.C. § §181, 201 et. seq. It does not ask for a review of the effect of the law on

the PRLA's. It does not raise a controversy on the interpretation of the Mineral Leasing Act. Plaintiffs' complaint involves the inability to receive a decision on their three PRLA's from the BLM. Now that they have received those decisions, albeit reversals of earlier determinations and decisions, they have received the agency action they asked for in their Complaint.

## PLAINTIFFS' CLAIM OF DUE PROCESS VIOLATIONS

In Paragraph 9 of their Complaint, Plaintiffs allege that the nearly five years of non-action by the BLM on the PRLA's from 2000 to 2005 constitutes such an egregious delay that it amounts to a denial of property without due process of law guaranteed by the 5th and 14th Amendments to the United States Constitution. The Plaintiffs do not ask for money damages but do ask the Court to order the BLM to issue the leases and for such other relief as the Court deems just and proper.

Under the APA, the Court is limited to reviewing final agency action under the arbitrary and capricious standard to determine if the agency examined the relevant evidence and articulated a rational connection between the facts found and the decision reached. Payton v. United States Department of Agriculture, 337 F. 3d 1163, 1168 (10th Cir. 2003). It is not authorized to award damages. 5 U.S.C. § 702; *accord*, McKeen v. U.S. Bureau of Land Management, 04 CV 1182 WJ/DJS, Memorandum Opinion and Order Granting Motion to Dismiss [Doc. No. 40 in 04 CV 1182].

As the Defendants have suggested in their Reply Brief, these claims raised by the Plaintiffs may sound in tort. However, a cause of action based on the Federal Tort Claims Act was not pled in the Complaint and there are no counts associated with claims seeking monetary damages.

7

The Order and Judgment accompanying this Memorandum Opinion and Order will be dismissing the case without prejudice. Plaintiffs are not precluded from raising such a claim in the future, if the facts and law support it.

## CONCLUSION

The Defendants' Motion to Dismiss for Lack of Jurisdiction is GRANTED. The Plaintiffs' Motion for a STAY is DENIED. The case will be DISMISSED WITHOUT PREJUDICE in a separate Judgment and Order.

_____
ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE
PRESIDING JUDGE